# Diehl, Appellant, *v.* General Baking Company et al.

Argued September 30, 1943. Before KELLER, P. J., BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ. (STADT-FELD and RENO, JJ., absent).

*G. A. Troutman,* with him *A. F. Barbieri,* for appellants.

*J. Paul Erwin,* with him *W. Glenn George,* for appellee

OPINION BY KENWORTHEY, J., December 10, 1943:
On July 29, 1938, Martin Diehl sustained a compen-

sable accidental injury consisting of fractures of the eighth and ninth ribs on the right side. He died March 20, 1939, as a result of the rupture of an aneurysm of the aorta. The only question is whether there is sufficient evidence to sustain the finding of the compensation authorities that there was a causal connection between the accident and his death. The court below was of opinion there was not and accordingly reversed the award and entered judgment for the employer.

The legal principles are well settled. They are ably discussed and the authorities collected in the opinion of Judge CRUMLISH. The burden was on claimant to show by competent medical testimony either that the accident caused the aneurysm or that it so aggravated a pre-existing aneurysm that it materially contributed to the death.

When regarded in the light most favorable to plaintiff, we think it was sufficient to support the award and the order of the court will be reversed.

At the time of the accident, Diehl was fifty-two years old and, to the casual observer, in excellent health. He was employed as a moulder of dough in the employer's baking plant. He was fully able to perform his rather laborious duties. On the day of the accident, while carrying a sack of flour weighing 150 pounds, he lost his balance and struck his side against a sieve, causing the above-mentioned fractures. Under an agreement, he was paid compensation for a period of 8-2/7ths weeks.

A number of well-known medical experts appeared and expressed their opinion on the controlling issue of fact. All of them conceded that an accidental injury, such as Diehl suffered, *could* cause an aneurysm or a sufficient aggravation of an existing one to materially contribute to his death. They all admitted that the question of the causal connection between the accident and the death was somewhat speculative and could not be known for a certainty. The employer's experts

gave as their opinion that the aneurysm antedated and was not aggravated by the injury; that an x-ray taken prior to the accident showed its presence and several taken after showed no increase in size.

The real question is whether the opinion of Dr. Jump, claimant's expert, was sufficiently clear, positive and unequivocal to meet the required standard.

Dr. Jump testified: "Q. What was the cause of death in this case? A. Rupture of the aneurysm." And, "Q. What produced it? Do you know? A. Yes. Q. What? A. Arterio-sclerosis as a predisposing condition and some trauma, accident, pressure, straining as exciting cause." Further, "Q. Do I understand it to be your opinion that aneurysm in this case was caused by trauma? A. I should say so, that was our opinion at that time."

Dr. Jump was, of course, not *certain* the aneurysm was caused by the accident. He discussed the additional possibility that the aneurysm antedated the accident. He said: "It [the blow] would cause a rupture if he had pre-existing aneurysm. It would not necessarily kill him at once it would produce greater enlargement, facilitating earlier rupture, not necessarily at the moment." Further, "If the aneurysm existed previously, a blow would contribute toward breaking thru." He was finally asked: "Q. What in your opinion was the cause of death? A. Rupture abdominal aneurysm. Q. What is the cause of that? A. Arterio-sclerosis. Q. Induced by what? A. According to the history and general probability, trauma or strain, the cases all show that sort of thing."

Perhaps the weight of the evidence was with the employer and against the opinions expressed by Dr. Jump. But it is not the function of either the lower court or this court to weigh the evidence. And, although Dr. Jump occasionally used such expressions as 'probably' and 'in all probability,' in the portions of his testimony

quoted the opinion expressed was sufficiently unequivocal. We think the testimony indicates more than an opinion that the accident *could have* or that it *probably* caused or aggravated the aneurysm; the compensation authorities were entitled to find the opinion was that it, in fact, *did* cause or aggravate the aneurysm. Having reached that conclusion, it necessarily follows that we think the lower court erred in reversing the board.

The judgment is reversed and the record returned to the lower court with direction to enter judgment on the award.